```
                    United States District Court
                      District of Massachusetts
 _____
                               )
Michael Ferrante,              )
                               )
          Plaintiff,           )
                               )
     v.                        )   Civil Action No.
                               )   22-10628-NMG
Santander Bank, N.A.           )
                               )
          Defendant.           )
 _____)
```

**MEMORANDUM & ORDER**

**GORTON, J.**

Plaintiff Michael Ferrante ("Ferrante" or "plaintiff") was the victim of a business e-mail compromise scheme. He complied with a directive of the perpetrator, posing as an employee of a venture capital firm familiar to Mr. Ferrante, to wire $345,000 to an account at defendant Santander Bank, N.A. ("Santander" or "defendant") in response to a sham capital call. As a result, Mr. Ferrante lost more than $140,000, which he attempts to recoup in this action. Defendant removed this case from the Massachusetts Superior Court for Suffolk County on diversity grounds and filed the instant motion to dismiss Mr. Ferrante's various tort claims under Massachusetts law.

## I. Background

### A. The Parties

Plaintiff Michael Ferrante is a resident of East Norwich, New York. Defendant Santander is a national association organized under Delaware law and has a "home" office in Delaware. Santander maintains its principal place of business and headquarters in Boston, Massachusetts.

### B. Factual Background

At the time of the investment at issue, Mr. Ferrante had a business relationship with the venture capital firm SustainVC. On November 16, 2020, he received an e-mail, purportedly from a familiar SustainVC Senior Analyst, Jazmine da Costa, notifying Mr. Ferrante that SustainVC "had approved three investments." Ms. Da Costa requested that Mr. Ferrante answer the "capital call notice to make the new investments and to repay the firm's line of credit." The instructions told Mr. Ferrante to wire $345,000 to an account at Santander. On November 18, 2020, once Mr. Ferrante had all the necessary information, he authorized Morgan Stanley, his broker, to send the funds to Santander. Unbeknownst to Mr. Ferrante, however, Ms. Da Costa's e-mail had been compromised by a third-party and SustainVC had not initiated a capital call.

- 3 -

The day of the wire, the perpetrator of the scheme tried to withdraw all $345,000 from the Santander account.  On November 23, 2020, Mr. Ferrante's Morgan Stanley broker asked him to confirm that the $345,000 wire was intentional because a Santander official had called Morgan Stanley to report suspicions that the wire was fraudulent.  Mr. Ferrante confirmed that he intended to send the wire based on his belief that Ms. Da Costa's e-mail request was genuine and Morgan Stanley told Santander that Mr. Ferrante's wire was intentional.

The week of November 30, 2020 Mr. Ferrante received a second call from Morgan Stanley.  Again, the broker asked Mr. Ferrante to confirm that the November 18, 2020 wire was intentional because Santander was concerned that it was fraudulent.  Mr. Ferrante again confirmed that it was intentional.  Santander did not explain to Morgan Stanley or Mr. Ferrante why it believed the wire to be fraudulent during either call.

On December 7, 2020, "Aaron," an employee in Santander's Fraud Unit, called Mr. Ferrante to notify him that the November 18, 2020 wire "seemed to be fraudulent on [Santander's] end" and that Mr. Ferrante should confirm the wire's authenticity with SustainVC.  Mr. Ferrante immediately called a partner at SustainVC, who told him that the firm had <u>not</u> put forth a

capital call on November 16, 2020 and Ms. Da Costa's e-mail was fraudulent. Mr. Ferrante called Aaron back to tell him that the wire was fraudulent and Aaron told him that the account had been "locked down" and his funds were "secured." Aaron explained that the account holder's November 18, 2020 attempt to withdraw the entirety of the funds was a "red flag" because it was the first and only account transaction. Aaron gave Mr. Ferrante instructions to begin the process of returning his funds, which Mr. Ferrante followed. Mr. Ferrante received no updates regarding his wire until March 9, 2021, although Aaron had suggested the return of his funds would be straightforward.

On March 9, 2021, Jeffrey Reiss, a Managing Director at Morgan Stanley, told Mr. Ferrante that only $203,687.87 of the $345,000 could be returned because Santander had, at some point, released the funds to the holder of the account, presumably the perpetrator of the scheme.

C.  **Procedural History**

Mr. Ferrante filed a complaint against Santander in Suffolk Superior Court on March 28, 2022. The complaint alleges three counts under Massachusetts common law: 1) negligence, 2) aiding and abetting conversion and 3) misrepresentation (intentional/negligent). On April 27, 2022, Santander removed

the action to this Court pursuant to 28 U.S.C. §§ 1332, 1441 and 1446 and promptly moved to dismiss.

## II. Motion to Dismiss

### A. Legal Standard

Mr. Ferrante's complaint must offer "only enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The Court may dismiss the complaint when it

> fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory."

Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008) (quoting Centro Medico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 6 (1st Cir. 2005)).

### B. Application

Santander moves to dismiss all counts in Mr. Ferrante's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

- 5 -

### 1. Count I: Negligence

In Massachusetts, a plaintiff claiming negligence must allege that

> (1) the defendant owed the plaintiff a duty of reasonable care; (2) the defendant breached that duty; (3) damage resulted; and (4) the defendant's breach caused that damage.

Saldivar v. Racine, 818 F.3d 14, 20-21 (1st Cir. 2016).  The "commercial bank-customer relationship" is viewed "as contractual," rather than fiduciary, in Massachusetts, Kriegel v. Bank of Am., N.A., No. 07-cv-12246-NG, 2010 WL 3169579, at *13 (D. Mass. Aug. 10, 2010), and

> [a] bank generally does not have a duty to investigate or inquire into the withdrawal of deposited funds by a person authorized to draw on the account to ensure that the funds are not being misappropriated.

Go-Best Assets Ltd. v. Citizens Bank of Mass., 972 N.E.2d 426, 431 (Mass. 2012).

> Such a duty arises, [however,] where a bank has actual knowledge of an intended or apparent misappropriation of funds and its failure to act would constitute participation or acquiescence in the misappropriation.

Id.

According to Santander, Mr. Ferrante's claim fails on the first element of negligence because he has not sufficiently alleged that Santander "ha[d] actual knowledge," id., such that it had a duty to Mr. Ferrante.  The Court disagrees.

Mr. Ferrante alleges that, as early as November 23, 2020, Santander had suspicions that the bank wire was fraudulent. Santander contacted Mr. Ferrante again the week of November 30 and a third time on December 7, when Aaron gave Mr. Ferrante specific instructions to confirm the wire's authenticity with SustainVC. After speaking with SustainVC, Mr. Ferrante "immediately" called Santander to tell them that the wire was fraudulent after all. At that point, Santander, through Aaron, told Mr. Ferrante that his account had been "locked down," that his funds were "secured," and that the initial request to withdraw the funds on November 18 "triggered Santander's Fraud alerts."[1]

As of December 7, Santander represented that the account was "locked down." Santander itself, quoting Go-Best Assets Ltd., 972 N.E.2d at 433 n.6, notes that a bank only takes "intrusive" measures, such as locking down an account, when it "has actual knowledge of an intended or apparent misappropriation." Accordingly, it is reasonable to infer that Santander had actual knowledge of the fraudulent activity on December 7 at the latest.

---

[1] Santander does not contest that Aaron's statements and actions, as a Santander employee, are attributable to Santander. See Lev v. Beverly Enters.-Mass., Inc., 929 N.E.2d 303, 308 (Mass. 2010) (describing liability of employer for torts committed by its employees in the course of their employment).

- 8 -

As Mr. Ferrante contends, even if Santander only had actual knowledge of fraud as of December 7, the complaint still states a plausible claim.  It is plausible that despite telling Mr. Ferrante his funds were "secured" on December 7, the funds were not secured and the perpetrator accessed them after that conversation.  The fact that it took months to return any funds to Mr. Ferrante supports the inference that the account was not properly locked down and in the months following Mr. Ferrante's conversation with Aaron, Santander was scrambling to determine the status of his money.  The Court will deny Santander's motion to dismiss as to Count I because Mr. Ferrante has plausibly alleged that Santander had a duty to him.

Santander does not contest the other elements of Mr. Ferrante's claim.  The Court notes, however, that the harm alleged — the loss of $141,312.13 — is economic and the Massachusetts Supreme Judicial Court ("SJC") has determined "that purely economic losses are unrecoverable in tort . . . in the absence of personal injury or property damage." FMR Corp. v. Bos. Edison Co., 613 N.E.2d 902, 903 (Mass. 1993).  This issue, and whether any exception applies, should be developed as this matter progresses beyond the motion to dismiss. Cf. Nota Constr. Corp. v. Keyes Assocs., Inc., 694 N.E.2d 401, 405 (Mass. App. Ct. 1998) (recognizing "[a]n exception to the [economic loss]

doctrine . . . for economic losses resulting from negligent misrepresentation").

### 2. Count II: Aiding and Abetting Conversion

In Massachusetts,

> [t]o prove that [a] bank aided and abetted a tort, the plaintiff must show: (1) that [a third-party] committed the relevant tort; (2) that the bank knew [the third-party] was committing the tort; and (3) that the bank actively participated in or substantially assisted in [the third-party's] commission of the tort.

Go-Best Assets Ltd., 972 N.E.2d at 438.

Santander does not contest the underlying tort of conversion, which "consists of wrongfully exercising dominion or control over the personal property of another." Pare v. Northborough Cap. Partners, LLC, 133 F. Supp. 3d 334, 337 (D. Mass. 2015). Rather, Santander contends that Mr. Ferrante has not plausibly alleged "substantial assistance" because

> the mere inaction of an alleged aider and abettor constitutes substantial assistance only if the defendant owes a fiduciary duty directly to the plaintiff.[2]

---

[2] Santander also challenges Mr. Ferrante's aiding and abetting conversion claim on knowledge grounds that parallel its contention as to negligence but because the Court determined that Mr. Ferrante adequately pled Santander's knowledge of fraud as of December 7, it need not address that contention again.

Mansor v. JPMorgan Chase Bank, N.A., 183 F. Supp. 3d 250, 266 (D. Mass. 2016) (quoting Lerner v. Fleet Bank, N.A., 459 F.3d 273, 295 (2d Cir. 2006)).

Mr. Ferrante's allegations in Count II are premised upon Santander's inaction — he asserts that "Santander's failure to act to secure Mr. Ferrante's funds constituted aiding and abetting in the conversion." Mr. Ferrante does not allege that Santander owed him a fiduciary duty and even if he pled such a duty, Mr. Ferrante's relationship with Santander is at best "an arm's-length, business relationship, [and] [n]o fiduciary duty is owed." Islam v. Option One Mortg. Corp., 432 F. Supp. 2d 181, 195 (D. Mass. 2006). Mr. Ferrante did adequately allege that Santander had a duty in negligence. A fiduciary duty is not, however, equivalent to a duty in tort. See id. (explaining that a "special relationship" is not "required to establish a duty of care in a negligence action" (citation omitted)).

Finally, although there may be a limited exception to the fiduciary duty rule for inaction, Mr. Ferrante has not pled that Santander's "inaction was designed intentionally to aid the primary fraud" and as a result, such exception does not apply. Mansor, 183 F. Supp. 3d at 266).

Because Mr. Ferrante has not sufficiently alleged that Santander substantially assisted conversion under those

circumstances, the Court will allow Santander's motion to dismiss Count II.

### 3. Count III: Misrepresentation (Intentional/Negligent)

Intentional misrepresentation has four elements:

> (1) the defendant made a false misrepresentation of material fact, (2) the defendant acted with knowledge of its falsity, (3) the defendant acted with the purpose of inducing the plaintiff to act on the misrepresentation and (4) the plaintiff relied on the misrepresentation to [his] detriment.

Int'l Floor Crafts, Inc. v. Adams, 477 F. Supp. 2d 336, 341 (D. Mass. 2007). However, an "intent to deceive is not required, [if] there is proof of a false representation of fact susceptible of the speaker's knowledge." Cummings v. HPG Int'l, Inc., 244 F.3d 16, 22 (1st Cir. 2001).

Negligent misrepresentation, in contrast, "does not require an intent to deceive or actual knowledge that a statement is false." Cumis Ins. Soc'y, Inc. v. BJ's Wholesale Club, Inc., 918 N.E.2d 36, 47 (Mass. 2009). It "requires only proof that the defendant failed to exercise reasonable care in communicating the false information." Int'l Floor Crafts, Inc., 477 F. Supp. 2d at 341.

Santander contends that Mr. Ferrante's misrepresentation claim — whether alleged as intentional or negligent — fails because Aaron's statements to Mr. Ferrante were not false.

- 11 -

Secondarily, Santander asserts that Mr. Ferrante has not sufficiently alleged that Santander had an "intent to deceive" for purposes of intentional misrepresentation. Finally, Santander contests Mr. Ferrante's reliance on Aaron's statements.

### a. False Statements

In its briefing, Santander strains to limit Aaron's statements by suggesting that he meant the bank had secured the portion of "funds that the bank had suspected as a fraud," as opposed to the entirety of the $345,000. Not so. Mr. Ferrante's allegations are clear — Aaron told him his account was "locked down" such that his funds were "secured," yet Mr. Ferrante lost more than $140,000. Aaron's representations regarding Mr. Ferrante's funds "w[ere] specific and verifiable, not a mere expression of opinion or estimate." Cummings, 244 F.3d at 22.

Taking the facts in the light most favorable to Mr. Ferrante, the Court discerns at least two plausible scenarios supporting falsity. At the time Aaron spoke to Mr. Ferrante, Santander had either "locked down" and "secured" 1) none of the funds, such that after the conversation the hacker received a portion of the $345,000, rendering the statement false because the account was not "locked down" on December 7 or 2)

$203,687.87 of the funds, meaning that before the conversation, the balance of the $345,000 was already released to the perpetrator and his funds accordingly would not have been "secured." Mr. Ferrante has adequately alleged false statements.

### b.   Intent

Santander raises — in a largely unsupported and under-developed manner — contentions challenging Mr. Ferrante's allegations as to scienter for his intentional misrepresentation claim. Santander frames its argument in terms of "intent to induce" rather than "intent to deceive." A defendant, however, "who knows of the falsity of his representation and makes it with intent to induce action or reliance is, per se, acting with intent to deceive." In re Friedlander, 170 B.R. 472, 477 n.3 (Bankr. D. Mass. 1994) (comparing intent requirement for intentional misrepresentation under Massachusetts law and fraud under 11 U.S.C. § 523(a)(2)(A) (1988) and "find[ing] no material difference").

Santander does not contest Mr. Ferrante's negligent misrepresentation claim on parallel grounds. Whether Mr. Ferrante's funds were actually "secured" and his account was "locked down" at the time Aaron spoke to him was "susceptible of the speaker's knowledge" and as a result, Mr. Ferrante need not

show an intent to deceive. Cummings, 244 F.3d at 22. The complaint will not be dismissed on that ground.

### c.  Reasonable Reliance

Determining "[w]hat constitutes reasonable reliance is a fact-driven inquiry." Ilex Invs. L.P. v. Bitran, No. SUCV201300489BLS2, 2016 WL 8200504, at *2 (Mass. Super. Dec. 23, 2016); see also First Marblehead Corp. v. House, 473 F.3d 1, 11 (1st Cir. 2006) ("Massachusetts courts have expressed a strong preference that reliance, in the context of negligent misrepresentation claims, be determined by a jury, and not on summary judgment. . . ."). Typically, "[s]tatements that are vague and general, or at odds with other information would not justify reliance." Khelfaoui v. Lowell Sch. Comm., 496 F. Supp. 3d 683, 689 (D. Mass. 2020).

Santander contends that Mr. Ferrante's reliance on Aaron's statements was unreasonable because Aaron's assurances came many days after the initial wire, rendering it "wishful thinking" for Mr. Ferrante to believe that Santander secured the entirety of his funds. The Court disagrees.

Mr. Ferrante has adequately pled that Aaron's statements were "sufficiently specific that it would be reasonable to rely on them," both for negligent and intentional misrepresentation. Id. As alleged, Aaron did not qualify his statements nor did he

put Mr. Ferrante on notice that he may not recoup his full investment. Rather, Aaron, a Santander employee, told him that his funds were "secured." The Court does not agree that the 19 days between the initial wire and Aaron's statements are "at odds" with each other such that reliance would be unreasonable. Id. Under those circumstances, where a bank employee made specific statements regarding the status of funds at the employee's bank, Mr. Ferrante's reliance was reasonable.

### ORDER

For the forgoing reasons, Santander's motion to dismiss (Docket No. 6) is: 1) as to Count II, **ALLOWED,** and 2) as to Counts I and III, **DENIED.** Count II is **DISMISSED.**

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated: July 5, 2023